UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN D. KEENAN,<br><br>             Plaintiff,<br><br>       v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>             Defendant. | No.  2:13-cv-1832-EFB<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying, in part, his application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  The parties' cross-motions for summary judgment are pending.  For the reasons that follow, plaintiff's motion is denied and defendant's motion is granted.

I. BACKGROUND

Plaintiff filed an application for a period of disability and DIB on June 7, 2005 alleging that he had been disabled since December 24, 2004.  Administrative Record ("AR") 56-58. Plaintiff application was denied initially and upon reconsideration.  *Id.* at 44-55.  On May 18, 2007, a hearing was held before administrative law judge ("ALJ") L. Kalei Fong.  *Id.* at 287-327.

/////

1

On July 18, 2007, the ALJ issued a decision finding that plaintiff was entitled to benefits as of May 1, 2006, but not as December 24, 2004, plaintiff's alleged onset date. *Id.* at 15-22.[1] Plaintiff requested that the Appeals Council review the ALJ's decision, *id*. at 10, and the Appeals Council denied review. *Id.* at 4-6.

Plaintiff then sought review of the Commissioner's decision in this court. On May 14, 2010, the court remanded the case to the Commissioner for further administrative proceedings. *Id.* at 472-487. The court concluded that the ALJ erred by not employing the services of a medical expert in light of an ambiguity as to the correct disability onset date. *Id*. at 485-487.

/////

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

Accordingly, the matter was remanded with instructions that a medical expert be consulted with respect to plaintiff's disability onset date. *Id*. at 487.

On November 9, 2010, another hearing was held before the ALJ. *Id.* at 527-560. Plaintiff was represented by counsel at the hearing, at which he and a medical expert testified. *Id.* On December 21, 2010, the ALJ issued a decision, again finding that plaintiff was not under a disability prior to May 1, 2006 under sections 216(i) and 223(d) of the Act.[2] *Id.* at 459-467. The ALJ made the following specific findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2009.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of December 24, 2004 to April 30, 2006 (20 CFR 404.1571 *et seq*.).

3. Prior to May 1, 2006, the claimant had the following severe impairments: diabetes, neuropathy, obesity and hypertension (20 CFR 404.1520(c)).

\* \* \*

4. Prior to May 1, 2006, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that, prior to May 1, 2006, the claimant had the residual functional capacity to perform a full range of light work as defined in 20 CFR 404.1567(b), with the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently; to stand and/or walk about 6 hours in an 8-hour workday; and to sit, with normal breaks, for a total of about 6 hours in an 8-hour workday.

\* \* \*

6. Prior to May 1, 2006, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

\* \* \*

---

[2] The ALJ's 2010 decision did not revisit the prior finding that plaintiff was disabled as of May 1, 2006. Instead, the only issue before the ALJ was whether plaintiff became disabled at some earlier date between December 24, 2004, the alleged onset date, and May 1, 2006, the date on which the ALJ previously determined plaintiff became disabled. *See* AR 22, 459.

7. The claimant was born on June 5, 1952 and was 57 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Prior to May 1, 2006, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

\* \* \*

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 24, 2004, the alleged onset date, to April 30, 2006 (20 CFR 404.1520(g)).

*Id.* at 461-467.

Plaintiff requested that the Appeals Council review the ALJ's decision, *id.* at 332-333, and on July 9, 2013, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 328-331.

II.   LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III.    ANALYSIS

Plaintiff argues that the ALJ improperly discounted the opinions of plaintiff's treating physicians and failed to provide a proper rationale for discounting plaintiff's credibility. ECF No. 11 at 14-21.

A. The ALJ Properly Weighed the Opinions of Plaintiff's Treating Physicians.

Plaintiff challenges the ALJ's discounting of the opinions of plaintiff's treating physicians, Dr. Laura Lee and Dr. Lisa Cosens. ECF No. 11 at 14-17.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 834. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id*.; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id*. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

/////

/////

However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Dr. Laura Lee, plaintiff's treating internist, completed a Family Leave Health Care Provider Certification in March 2005, in which she stated that plaintiff was "no longer able to work as a sheet metal worker" due to vision changes secondary to diabetes. AR 150. Dr. Lee also completed a Physician's Medical Report for the Sheet Workers of Northern California Pension Plan on April 13, 2005. *Id.* at 145. Dr. Lee stated that plaintiff was totally disabled and could not continue or resume working as a sheet metal worker, but noted that it was unclear whether the disability was permanent. *Id.* On November 2, 2005, Dr. Lee wrote a letter indicating that plaintiff had diabetes, diabetic neuropathy bilateral extremities, diabetic neuropathy, hypertension, and hyperlipidemia and stating that was unlikely that he would ever be able to return to work as a sheet metal worker. *Id.* at 270.

Plaintiff also received treatment from Dr. Lisa Cosens. *Id.* at 189-191. Dr. Cosens diagnosed plaintiff with mitochondrial myopathy (not confirmed) and hypertension. *Id.* at 189. She stated that the diagnosis was based on her evaluation of the plaintiff, x-rays to rule out various diseases, labs and biopsies. *Id.* Dr. Cosens opined that plaintiff could walk and/or stand less than one hour in an eight-hour day, sit for six to eight hours in an eight-hour work day with breaks, and lift ten pounds or less occasionally and never lift more. *Id*. at 189-190. She further opined that plaintiff could not climb stairs or ladders, was partially restricted in his bending, and required at least four rest periods during the day and a ten minute break every hour. *Id.* at 190-191.

Plaintiff also underwent a comprehensive internal medicine evaluation, which was performed by examining physician Dr. Philip Seu. *Id*. at 124-127. Plaintiff reported a history of diabetes, high blood pressure, vision problems, and pain in his feet. *Id*. at 124-125. Plaintiff's blood pressure was 116/98; his vision without corrective lenses was 20/50 in the left and 20/20 in the right, and plaintiff was able to read the clock on the wall at a distance of 15 feet. *Id*. at 125.
/////

6

His gait was normal; there was no evidence of swelling, tenderness or inflammation in his joints; 5/5 motor strength in all muscle groups, no evidence of atrophy, but he did have trace preibial edema up to his knees. *Id*. at 126.   Dr. Seu diagnosed plaintiff with non-insulin dependent diabetes, hypertension, vision problems, and diabetic neuropathy in his feet. *Id.* at 126-127.  It was his opinion that plaintiff had no physical limitations in his ability to work. *Id.*

The record also contains a Physical RFC Assessment completed by non-examining physician, Dr. Friedman. *Id.* at 167-174.  Dr. Friedman diagnosed plaintiff with a neurological disorder, vision disorder, diabetes mellitus, high blood pressure, and obesity. *Id.* at 167.  Dr. Friedman opined that plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently; stand, walk, and/or sit six hours in an eight-hour work day; push and pull without limitations, and had no postural or manipulative limitations. *Id.* at 168.  He further opined that plaintiff had limited far acuity in his vision and that he should avoid even moderate exposure to extreme cold and hazards (machinery, heights, etc.). *Id.* at 170-171.

Finally, the record contains testimony from Dr. Alan Coleman, a medical expert, who testified at the hearing on November 9, 2010. *Id.* at 533-551.  Dr. Coleman diagnosed plaintiff with morbid obesity, type II diabetes, hypercholesterolemia, and "probably some very mild degree of diabetic peripheral neuropathy." *Id.* at 353.  Dr. Coleman testified that there were no objective findings to support a diagnosis for mitochondrial myopathy, as diagnosed by Dr. Cosens and explained that the two critical tests used to diagnose it, a muscle biopsy and genetic analysis, were performed on plaintiff and came back with normal results. *Id.* at 533-534.  With regard to plaintiff's diabetic neuropathy, Dr. Coleman testified that the findings of the abnormal EMG performed by Dr. Rinzler, *id.* at 131-132, were consistent with early diabetic neuropathy, but the medical record indicated that the condition was mild. *Id.* at 535, 548.  Furthermore, Dr. Coleman opined that plaintiff could perform "at least sedentary" work based on his subjective complaints, but found no objective findings "that would preclude light" work. *See id.* at 550-551.

In assessing plaintiff's RFC, the ALJ gave significant weight to the opinions of Drs. Seu, Friedman, and Coleman, while giving less weight to Dr. Cosens' and rejecting Dr. Lee's

/////

7

1  opinions. *Id.* at 463-465. Plaintiff argues that the ALJ erred by improperly discounting or

2  rejecting Dr. Lee and Dr. Cosens' opinions. ECF No. 11 at 14-17.

3  The ALJ rejected Dr. Lee's opinions because her determination that plaintiff was totally

4  disabled addressed the ultimate issue of disability which is an issue reserved for the

5  Commissioner. AR 463. "Although a treating physician's opinion is generally afforded the

6  greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an

7  impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144,

8  1149 (9th Cir. 2001); *see also* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that

9  you are 'disabled' or 'unable to work' does not mean that we will determine that you are

10 disabled."). Dr. Lee did not provide any opinion as to plaintiff's specific functional limitations.

11 *See* AR 145, 150, 270. The only opinion she provided was that plaintiff was disabled. As this

12 opinion went to the ultimate issue, which is reserved for the Commissioner, the ALJ properly

13 rejected Dr. Lee's opinion.

14 As for Dr. Cosens, the ALJ discounted her opinion because it was (1) inconsistent with the

15 objective medical findings, (2) inconsistent with other medical opinions, and (3) based on

16 plaintiff's subjective complaints. AR 465. Because Dr. Cosens' opinion was contradicted by

17 Drs. Seu, Friedman, and Coleman's opinions, the ALJ was only required to give "specific and

18 legitimate" reasons for rejecting Dr. Cosens' opinion. *See Orn*, 495 F.3d at 632.

19 The ALJ discounted Dr. Cosens' opinion because it was not well supported by objective

20 medical findings. AR 465. An ALJ is not required to accept a treating physician's opinion that is

21 unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r of the*

22 *SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also* Social Security Ruling 96-2p, SSR LEXIS 9

23 fn3 (noting it would be "error to give an opinion controlling weight simply because it is the

24 opinion of a treating source if it is not well-supported . . . .").

25 An MRI conducted in September 2005 revealed no evidence of demyelinating disease.

26 AR 142. The following month plaintiff underwent a lumbar spine MRI which revealed no

27 evidence of spinal canal or neural foraminal stenosis. *Id*. at 277. In November 2005, plaintiff

28 underwent an electromyography (EMG) and nerve conduction test for complaints of leg

1 cramping, numbness, and pain. *Id*. at 131-135. The results indicated no peripheral sensory
2 neuropathy. An MRI of the cervical spine revealed no abnormalities. *Id*. at 269. A bone scan
3 was performed in February 2006, which showed essentially normal whole body bone scan with
4 no evidence of metastatic disease or abnormal uptake to suggest a tumor. *Id*. at 263. In May
5 plaintiff underwent a muscle biopsy. *Id*. at 258. The results were normal, with no indication of
6 myopathy or mitochondrial disorder. *Id*. at 181.

7 Thus, the objective medical evidence consistently found no abnormalities. As noted by
8 the ALJ, "Dr. Cosens' diagnosis of mitochondrial myopathy was shown to be unconfirmed." *Id*.
9 at 465. Furthermore, Dr. Coleman, the medical expert whose opinions the ALJ gave great
10 weight, testified that there was "no evidence" of mitochondrial myopathy. *Id.* at 535; *See*
11 *Andrews*, 53 F.3d at 1042 (finding the ALJ's reliance on a non-examining physician was proper
12 as the physician testified at the hearing and was subject to cross-examination). He explained that
13 an abnormal finding from a muscle biopsy and/or a genetic analysis would support a diagnosis for
14 mitochondrial myopathy, but noted that both plaintiff's muscle biopsy and genetic analysis were
15 normal. *Id.* at 534. After reviewing plaintiff's medical records, Dr. Coleman found that nothing
16 in the objective medical evidence would preclude plaintiff from performing light work. *Id.* at
17 550-551. Given the lack of objective medical evidence, the ALJ properly discounted Dr. Cosens'
18 opinion.

19 The ALJ also gave reduced weight to Dr. Cosens' opinion because it was inconsistent
20 with other evidence in the record, including determinations made by Dr. Seu's opinion. AR 465.
21 Specifically, the ALJ observed that Dr. Cosens indicated her opinion was based on findings that
22 plaintiff had muscle fatigue and weakness, *see id*. at 189, which was contradicted by Dr. Sue's
23 findings that plaintiff had 5/5 motor strength in all muscle groups. *Id*. at 126, 465. The ALJ
24 properly consider evidence from Dr. Seu's examination in discounting Dr. Cosens' opinion. *See*
25 *Magallanes*, 881 F.2d at 751 ("Where the opinion of the claimant's treating physician is
26 contradicted, and the opinion of the nontreating source is based on independent clinical findings
27 that differ from those of the treating physician, the opinion of the nontreating source may itself be
28 substantial evidence."); *Seltser v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 186546 (S.D. Cal.

9

Oct. 1, 2013) ("The more consistent a medical opinion is with the record as a whole the more weight it is given.") (citing 20 C.F.R. § 404.1527(d)(4)).

The ALJ also discounted Dr. Cosens' opinion because it "appear[s] to be based merely on the claimant's subjective complaints, and not on objective medical findings and relevant medical evidence." AR 465. The opinion of a treating physician may be rejected where it is premised primarily on plaintiff's subjective complaints and the ALJ properly discredited plaintiff's credibility. *Tonapetyan*, 242 F.3d at 1149; *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). As noted above, medical tests consistently documented normal findings and, contrary to Dr. Cosens indication that plaintiff has weakness and fatigue, examination demonstrated that plaintiff had 5/5 motor strength in all muscle groups. The ALJ logically concluded from this evidence that Dr. Cosens based her opinion on plaintiff's subjective complaints and not objective medical evidence. *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) ("[T]he ALJ is entitled to draw inferences logically flowing from the evidence"). As provided below, the ALJ properly discounted plaintiff's subjective complaints. Thus, Dr. Cosens' reliance on plaintiff's subjective complaints in formulating her opinion was a specific and legitimate reason for discounting her treating opinion.

Accordingly, the ALJ provided legally sufficient reasons for rejecting Dr. Lee's opinion and discrediting Dr. Cosens' opinion, and therefore did not err in rejecting these opinions.

B. <u>The ALJ Properly Rejected Plaintiff's Subjective Complaints and Credibility</u>

Plaintiff next argues that the ALJ erred by failing to give clear and convincing evidence for discounting his subjective complaints. ECF No. 11 at 17-21.

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of impairment, the ALJ may then consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id*. at 345-347. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

10

1  prescribed course of treatment, and (3) the applicant's daily activities. *Smolen*, 80 F.3d at 1284.
2  Work records, physician and third party testimony about nature, severity and effect of symptoms,
3  and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec.*
4  *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly
5  debilitating medical problem may be a valid consideration by the ALJ in determining whether the
6  alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of*
7  *HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own
8  observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot
9  substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990).
10 "Without affirmative evidence showing that the claimant is malingering, the Commissioner's
11 reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan*, 169 F.3d
12 at 599.
13     Plaintiff testified that between December 24, 2004 and May 1, 2006, that he could stand
14 for less than ten minutes at a time, walk barely forty feet, "couldn't really sit at all," his hands
15 shook so bad he couldn't use a spoon, had to sleep sitting up, and could only manage to sleep two
16 to three hours at a time. AR 555-557.  He also testified that his diabetes and hypertension were
17 well controlled, but he still experienced some symptoms. *Id.* at 553.  Plaintiff completed a
18 Disability Report, in which plaintiff indicated that he had been diagnosed with vision problems,
19 diabetes, hypertension, and high cholesterol, had difficulty climbing stairs, seeing written words,
20 reading blueprints, walking far, and could not wear his tool belt or stand for too long without
21 pain. *Id.* at 62-63.  Plaintiff indicated that he stopped working because of his condition as well as
22 the fact that he had not been called out to work since his last job ended in August of 2004. *Id.* at
23 63.  In an Exertional Activities Questionnaire, he indicated that he could climb stairs; lift/carry
24 five to fifteen pounds; go grocery shopping;  run small errands; help with housework like
25 emptying the dishwasher, vacuuming, or doing laundry, drive for an hour or two, and walk one to
26 two blocks before having to rest. *Id.* at 74, 76.  He also indicated that he was sleeping 7-8 hours a
27 night and took a half hour nap in the afternoons. *Id.* at 75.
28 /////

11

The ALJ found that plaintiff's statement regarding the extent of his limitations from December 24, 2004 to April 30, 2006 were not fully credible. *Id.* at 466. First, the ALJ found that plaintiff's subjective complaints were not credible because they were not supported by objective medical evidence. *Id.* While an ALJ may not rely solely on a lack of objective medical evidence to support an adverse credibility finding, it is a relevant consideration in assessing credibility. *See Burch v. Barnhart*, 400 F. 3d 676,681 (9th Cir. 2005); *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). As detailed above, there was little to no objective medical evidence supporting plaintiff allegations of debilitating pain. Thus, the ALJ reasonably considered the lack of objective medical evidence in assessing plaintiff's credibility.

The ALJ further found that plaintiff's subjective complaints were not fully credible as they were inconsistent with his previous admissions. AR 466; *See Smolen*, 80 F.3d at 1284 (an ALJ may rely on inconsistent testimony in assessing a claimant's credibility). At the hearing, plaintiff testified that he could lift "probably just enough to feed [him]self," and that his hands were shaking so bad that when he went to a restaurant he would have to "get it [soup] in a coffee cup because . . . [he] couldn't use a spoon." *Id.* at 556-557. In the Extertional Activities Questionnaire completed by plaintiff, he indicated that he was able to do his own grocery shopping and lift five to fifteen pounds. *Id.* at 74. The ALJ permissibly discounted plaintiff's credibility based on these inconsistent statements. *Id.* at 466.

The ALJ also discredited plaintiff's subjective complaints because plaintiff was non-compliant with his medical treatment. *Id.* at 466. An ALJ is permitted to consider an unexplained or inadequately explained failure to follow a prescribed course of treatment in assessing credibility. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 21012); *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (holding that where a claimant complains of disabling pain but fails to seek treatment, or fails to follow prescribed treatment, an ALJ may use such failure as a basis for finding the complaint unjust or exaggerated). Throughout the treatment notes there are indications that plaintiff was told to stop all tobacco use, yet plaintiff failed to comply. AR 130, 135, 138, 141-142, 148-149, 198, 219, 224-225, 238, 241, 244, 247, 463, 466. He informed his physicians on several occasions that he did not want to quit. *Id.* at 219, 225, 244, 247. However,

12

the reliance on plaintiff's failure to quit smoking as a basis for discounting his credibility is questionable. Nicotine addiction may have and likely did play a great role in plaintiff's resistance to quitting. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("It is certainly possible that [plaintiff] was so addicted to cigarettes that she continued to smoke even in the face of debilitating" impairments.). However, this factor alone does not warrant reversal of the ALJ's credibility finding. Given the other clear and convincing reasons provided by the ALJ for discounting plaintiff's credibility, any reliance on this last reason was harmless. *Id*. (finding that since the ALJ gave other independent reasons for discounting the plaintiff's credibility, "the ALJ's reliance on [plaintiff's] continued smoking, even if erroneous, amounts to harmless error.").

Contrary to plaintiff's contention, the ALJ provided clear and convincing reasons for discrediting plaintiff's subjective complaints. Accordingly, the ALJ did not err in assessing plaintiff's credibility.

IV.	CONCLUSION

The ALJ applied the proper legal standard and supported his decision with substantial evidence. Therefore, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;
2. The Commissioner's cross-motion for summary judgment is granted; and
3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: March 25, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE